IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DAVIS IGLESIAS, | ) |
| Plaintiff, | ) Civil Action No. 2:24-cv-0513 |
| | ) Magistrate Judge Patricia L. Dodge |
| v. | ) |
| SUPERINTENDENT MICHAEL ZAKEN, et al., | ) |
| Defendants. | ) |

## MEMORANDUM OPINION[1]

Davis Iglesias ("Iglesias"), a pro se state prisoner currently housed at State Correctional Institute ("SCI") at Greene, brings this civil rights action against Defendants Superintendent Michael Zaken, Ms. Kois, and S. Longstreth (collectively "Defendants"). Iglesias's claims arise from the Pennsylvania Department of Corrections ("DOC") allegedly confiscating and subsequently losing or destroying Iglesias's personal property. Pending before the Court is Defendants' Motion to Dismiss for Failure to State a Claim (ECF No. 20). For the following reasons, the motion will be granted in part and denied in part.

### I.  Relevant Background

Iglesias lodged his initial complaint accompanied by a motion for leave to proceed *in forma pauperis* on April 2, 2024. (ECF No. 1.) The Court granted the motion and docketed the Complaint on April 12, 2024. (ECF No. 5.) The Complaint names SCI Greene Superintendent Michael Zaken ("Zaken") and Ms. Kois ("Kois") in their individual capacities but does not specify the capacity in which S. Longstreth ("Longstreth") is named. (*Id.* at 1-2.)

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c)(1), the parties have voluntarily consented to have a United States Magistrate Judge conduct proceedings in this case. The undersigned therefore has the authority to decide dispositive motions and enter final judgment.

According to the Complaint, on February 8, 2024, Kois, the mailroom supervisor at SCI Greene, confiscated an incoming photobook that contained pictures of Iglesias's family. Kois confiscated the photobook "based on there [sic] suspicions of my family showing gang signs." (*Id.* at 4.) Iglesias filed a grievance[2] and appeal of the confiscation. The photos were reviewed by Zaken, who ultimately upheld Iglesias's appeal and issued a response allowing Iglesias to have the photobook. (*Id.* at 6.)

Despite winning his appeal, Iglesias alleges to have never received the photobook. He filed another grievance[3] based on his belief that Kois had destroyed or lost the photobook. Longstreth conducted the initial review and investigation of the second grievance. (*Id.* at 8.) During the investigation, Kois stated that although she remembered sending the photobook to Iglesias's cellblock, she could not remember when it was sent. Other DOC officers interviewed by Longstreth could not recall one way or another if Iglesias had received a photobook. As a result, Longstreth concluded:

> My investigation is inconclusive, I cannot prove whether you were given the photobook or not.
>
> In conclusion, based on my inconclusive investigation I am not upholding your grievance. I am unable to prove whether you received the photo book or not. Unless property has a chain of custody following it, there is no way to track it. Furthermore, I cannot prove if you received the photobook, destroyed it, handed it off to someone else etc.
>
> As a result, the investigation was deemed inconclusive.

(*Id.*)

Iglesias's subsequently filed Complaint alleges that the photobook was lost, destroyed, or

---

[2] Grievance #1072186
[3] Grievance #1075125

2

given to another inmate by mailroom staff. (*Id.* at 3-5.) He asserts claims under various Amendments,[4] along with common law negligence against Defendants. (*Id.* at 3.)

Defendants moved to dismiss Iglesias's complaint under Federal Rule of Civil Procedure 12(b)(6). (ECF No. 20.) The motion has now been fully briefed (ECF Nos. 22, 25) and is ready for disposition.

## II.  Legal Standard

A complaint may be dismissed, in whole or in part, for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding a Rule 12(b)(6) motion, the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)).

To overcome a 12(b)(6) motion, the complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the complaint "does not need detailed factual allegations[,]" a mere "formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. In short, the plaintiff "must plead facts sufficient to show that [their] claim has substantive plausibility." *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 12 (2014).

---

[4]  When asked which federal laws were violated, the Complaint states: "(1st Amendment right to property) 8th Amendment cruel unusual punishment deliberate indiffrence [sic] / racial discrimination retaliation for writing grievance / neglegance [sic]" (ECF No. 5 at 1.)

3

Thus, in assessing the sufficiency of a complaint, a court must: (1) outline the elements plaintiff must plead to state a claim for relief; (2) peel away allegations that amount to mere conclusions and are thus not entitled to the assumption of truth; and (3) look for well-pled factual allegations, assume their veracity, and determine whether they plausibly give rise to an entitlement to relief. *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012). The court's plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

Typically, when dismissing a claim for failure to state a claim, "a district court must permit a curative amendment, unless an amendment would be inequitable or futile." *Phillips*, 515 F.3d at 236 (citing *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002)). "An amendment is futile if the amended complaint would not survive a motion to dismiss for failure to state a claim upon which relief could be granted." *Alvin v. Suzuki*, 227 F.3d 107, 121 (3d Cir. 2000).

### III. Discussion

#### A. Section 1983 claims

Iglesias's claims are brought pursuant to 42 U.S.C. § 1983. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). Section 1983 does not itself create any substantive rights; it simply provides a cause of action that allows the plaintiff to vindicate rights that have already been secured. *See, e.g.*, *Gonzaga Univ. v. Doe*, 536 U.S. 273, 285 (2002) ("§ 1983 merely provides a mechanism for enforcing individual rights 'secured' elsewhere"). Iglesias asserts claims for violations of the First, Eighth, and Fourteenth Amendments.

4

1. <u>Claims against Defendants in their official capacities</u>

Iglesias brings his claims against Zaken and Kois in their "individual" capacities. The Complaint does not specify the capacity in which Longstreth is sued. Defendants argue that the any claims against Defendants in their official capacities are barred by the Eleventh Amendment. (ECF No. 22 at 3-4.)

The Eleventh Amendment prohibits actions in the federal courts against states, their agencies, and any state officials acting within their official capacities. *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 253-54 (3d Cir. 2010) ("Individual state employees sued in their official capacity are also entitled to Eleventh Amendment immunity because 'official-capacity suits generally represent only another way of pleading an action' against the state.") (quoting *Hafer v. Melo*, 502 U.S. 21, 25 (1991)). The DOC is an agency of the Commonwealth of Pennsylvania and, as such, any DOC employee sued in their official capacity is entitled to Eleventh Amendment immunity unless an exception to such immunity applies. *See*, *e.g.*, *Lavia v. Pennsylvania, Dep't of Corr.*, 224 F.3d 190, 195 (3d Cir. 2000).

Eleventh Amendment immunity "may be lost in one of two ways: (1) if the Commonwealth waived its immunity; or (2) if Congress abrogated the States' immunity pursuant to a valid exercise of its power." *Id.* Neither exception applies to Iglesias's § 1983 claims. The Commonwealth has not waived its immunity, *see*, *e.g.*, *id.* (citing 42 Pa. Cons. Stat. § 8521(b)), and Congress did not abrogate states' sovereign immunity when it enacted § 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989); *Quern v. Jordan*, 440 U.S. 332, 339-46 (1979). Therefore, to the extent that Iglesias seeks to assert any § 1983 claims against Longstreth or any other Defendant in their official capacities, those claims are barred by the Eleventh Amendment

and are accordingly dismissed with prejudice.

2. <u>Eighth Amendment claim</u>

Defendants argue that Iglesias's claim fails because the destruction of a single piece of personal property is insufficient to show a violation of the Eighth Amendment. They also argue that Iglesias failed to allege any physical injury, let alone one that would rise to the level of "objective severity" required to support a finding of deliberate indifference. (ECF No. 22 at 7.) The Court agrees.

The Eighth Amendment prohibits cruel and unusual punishment that "violates civilized standards of humanity and decency." *Griffin v. Vaughn*, 112 F.3d 703, 709 (3d Cir. 1997). Prison conditions are cruel and unusual if they deprive inmates of basic human needs, such as food, sanitation, and medical care. *Rhodes v. Chapman*, 452 U.S. 337, 347-48 (1981). To succeed on a claim brought under the Eighth Amendment, a prisoner must show: (1) that they were subjected to a deprivation that was "objectively, sufficiently serious" such that a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities; and (2) that prison officials acted with "deliberate indifference," which occurs only if the official "knows of and disregards an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 828, 837 (1994).

Courts have consistently found that the destruction of an inmate's personal property is not a sufficiently serious deprivation that would give rise to Eighth Amendment liability. *See, e.g.*, *Ransome v. Longstreth*, 2022 U.S. Dist. LEXIS 205831, at *25 (W.D. Pa. Nov. 14, 2022) ("Plaintiff's Eighth Amendment claim for destruction of his . . . family photos . . . should be dismissed with prejudice."); *Wongus v. Corr. Emergency Response Team*, 389 F. Supp. 3d 294,

301-02 (E.D. Pa. 2019) (finding allegations that prison officials "defacing [plaintiff's] family photo with a swastika," although "repugnant and detrimental to the orderly administration of a prison," did not "rise to the level of an Eighth Amendment violation."); *Payne v. Duncan*, 2017 U.S. Dist. LEXIS 18718, at *24 (M.D. Pa. Feb. 9, 2017) ("Plaintiff's claim for destruction of property under the Eighth Amendment does not constitute a deprivation of life's necessities."), *aff'd*, 692 F. App'x 680 (3d Cir. 2017).

Thus, even assuming that Iglesias's allegations that Defendants destroyed his photobook are true, he has nonetheless failed to state a claim under the Eighth Amendment and any attempt to amend this claim would be futile as a matter of law. Accordingly, the Eighth Amendment claims against Defendants will be dismissed with prejudice.

3. Fourteenth Amendment claim

Defendants next argue that Iglesias failed to state a claim under the Fourteenth Amendment for deprivation of property.[5] (ECF No. 22 at 8-9.) While Iglesias's Complaint does not specifically cite the Fourteenth Amendment, the Court agrees that, even if Iglesias's general claims for destruction of property can be construed as invoking due process, these claims must be dismissed.

The United States Supreme Court has held that both negligent and intentional deprivations of property do not violate the Due Process Clause if the state provides an adequate post-deprivation remedy. *Hudson v. Palmer*, 468 U.S. 517, 533 (1984). "The prison grievance procedure provides an adequate post-deprivation remedy, and the existence of this post-deprivation remedy forecloses [plaintiff's] due process deprivation of property claim." *Mbewe v. Delbalso*, 2024 WL 510500, at *3 (3d Cir. Feb. 9, 2024) (citing *Tillman v. Lebanon Cnty. Corr. Facility*, 221 F.3d 410, 422 (3d

---

[5] Iglesias does not address Defendants' Fourteenth Amendment argument in his response.

Cir. 2000)) (internal citation omitted).

It is clear from the Complaint and attachments thereto that Iglesias had access to the grievance process at SCI Greene and that he filed multiple grievances and appeals related to the confiscation of his photobook. "[T]hat Plaintiff did not prevail in this procedure in no way affects the procedure's adequacy as a post-deprivation remedy." *Austin v. Lehman*, 893 F. Supp. 448, 454 n.4 (E.D. Pa. 1995) (citations omitted). Thus, because Iglesias had an available remedy to the alleged deprivation of his personal property, there was no violation of his procedural due process rights. As amendment would be futile, any claim under the Fourteenth Amendment will be dismissed with prejudice.

4. <u>First Amendment claim</u>

Defendants also argue that Iglesias failed to state a claim for First Amendment retaliation. To state a claim for retaliation under the First Amendment, a plaintiff must allege: (1) that they were engaged in constitutionally protected conduct; (2) an adverse action by prison officials; and (3) a causal link between the exercise of the constitutional rights and the adverse action taken. *See, e.g.*, *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003); *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001).

For purposes of a retaliation claim, "adverse action" is conduct "sufficient 'to deter a person of ordinary firmness' from exercising his First Amendment rights." *Allah v. Seiverling*, 229 F.3d 220, 225 (3d Cir. 2000) (quoting *Suppan v. Dadonna*, 203 F.3d 228, 235 (3d Cir. 2000)). "This requirement is not too demanding: 'unless the claimed retaliatory action is truly "inconsequential," the plaintiff's claim should go to the jury.'" *Angle v. Smith*, 2023 U.S. Dist. LEXIS 20727, at *24 (W.D. Pa. Feb. 7, 2023) (quoting *Bell v. Johnson*, 308 F.3d 594, 603 (6th

8

Cir. 2002)). A plaintiff may establish causation via direct evidence or an inference of retaliatory motive arising from either "(1) an unusually suggestive temporal proximity between the protected activity and the alleged retaliatory action; or (2) a pattern of antagonism coupled with timing that suggests a causal link." *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007).

It is well-settled that the filing of a grievance is constitutionally protected conduct. *See Robinson v. Taylor*, 204 Fed. Appx. 155, 157 (3d Cir. 2006). The first element is therefore met, as it is undisputed that Iglesias filed grievances relating to the photobook.

As to the second element required to show retaliation, the adverse action alleged is that Iglesias did not receive the photobook. Although he cannot and does not say for certain what happened to the photos, Iglesias maintains that he never received them despite winning his appeal of their confiscation. (ECF No. 5 at 4) ("But I never got the photos, the mail room iether [sic] destroyed them lost them or gave them to another inmate.")

With respect to the third element, allegations of "suggestive temporal proximity" between the plaintiff's exercise of their First Amendment rights and the adverse action support an inference of causation. *See Rauser*, 241 F.3d at 334 (citing *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 280 (3d Cir. 2000)) (finding that "suggestive timing is relevant to causation in retaliation case"). In his Complaint and the attached grievances, Iglesias alleges that mailroom staff destroyed, lost, or gave away the photobook. Construing the Complaint liberally as the Court must with pro se filings, some allegations seem to suggest that whatever happened to the photobook occurred after Zaken upheld Iglesias's initial grievance and issued the appeal decision allowing the photos. (*See* ECF No. 5 at 8) ("It is your belief [Kois] destroyed the photo book because she denied the photo book from the start."). Accepting Iglesias's factual allegations as true, which the Court must at this

stage of the litigation, the Complaint therefore states a cognizable First Amendment retaliation claim against Kois. Accordingly, Defendants' motion will be denied with respect to this claim.

     5. <u>Personal involvement of Zaken and Longstreth</u>

Beyond meeting the minimum pleading standards required to plausibly state a claim for First Amendment retaliation, a § 1983 plaintiff also bears the burden of showing that each named defendant was personally involved in the alleged constitutional violation. *See Saisi v. Murray*, 822 Fed. Appx. 47, 48 (3d Cir. 2020). The doctrine of respondeat superior alone cannot be the basis for liability in a § 1983 action, and supervisor-defendants cannot be found liable for every illegal act at a correctional facility. *Iqbal*, 556 U.S. at 676 ("Because vicarious liability is inapplicable to . . . 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."); *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). Instead, courts have identified two ways for an individual to be found liable for the constitutional misconduct of a subordinate.

First, liability may attach if a supervisor-defendant, "with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused the constitutional harm.'" *A.M. v. Luzerne Cty. Juv. Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (quoting *Stoneking v. Bradford Area Sch. Dist.*, 882 F.2d 720, 725 (3d Cir.1989)). Second, "a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in [their] subordinates' violations." *Id.* Constructive knowledge is not enough. *See Chavarriaga v. N.J. Dep't of Corr.*, 806 F.3d 210, 222 (3d Cir. 2015) ("Although a court can infer that a defendant had contemporaneous knowledge of wrongful conduct from the circumstances surrounding a case,

the knowledge must be actual, not constructive."). The allegations must be made with appropriate particularity and must sufficiently describe the defendant's participation in or actual knowledge of and acquiescence in the alleged misconduct. *Id.* (citing *Rode*, 845 F.2d at 1207); *see also Mack v. Clark*, 2022 U.S. Dist. LEXIS 121813, at *12 (W.D. Pa. Jul. 11, 2022) ("Allegations that broadly implicate multiple defendants without delineating individual conduct are legally insufficient.").

Defendants argue that Iglesias failed to allege the level of personal involvement as to Zaken and Longstreth required to impose liability under § 1983. (ECF No. 22 at 4-5.) Iglesias argues that Zaken and Longstreth were personally involved in the review of his grievance and that they should have taken additional steps to ensure that he received the photobook. (ECF No. 25 at 2-3.)

The only allegations about Zaken are that he was responsible for reviewing Iglesias's first grievance. There are no allegations that Zaken destroyed, lost, or gave away the photobook or that he had any involvement beyond the initial grievance review and appeal process. The Complaint similarly contains no specific allegations about Longstreth. Aside from his name appearing on the Initial Review Response to Iglesias's second grievance (ECF No. 5 at 8), he is not specifically mentioned anywhere in the Complaint. Longstreth recounts his investigation into Iglesias's grievance before ultimately concluding that his investigation was inconclusive. Thus, the only times that Zaken and Longstreth are mentioned in the Complaint are in the context of the grievance review process. Even accepting Iglesias's allegations as true, there is no basis for a claim that either Zaken or Longstreth was personally involved in violating Iglesias's First Amendment rights or that they had any actual knowledge of a subordinate's constitutional misconduct. Accordingly, neither Zaken nor Longstreth can be liable under § 1983 and the claims against them will be dismissed with prejudice as amendment would be futile.

## B. State-law negligence claim

Defendants argue that Iglesias's common law negligence claim[6] is barred by state sovereign immunity. Under Pennsylvania law, "the Commonwealth, and its officials *and employees acting within the scope of their duties*, shall continue to enjoy sovereign immunity and official immunity and remain immune from suit except as the General Assembly shall specifically waive the immunity." 1 Pa. Cons. Stat. § 2310 (emphasis added). Thus, Pennsylvania's sovereign immunity statute affords state officials broad immunity for state-law tort claims.

With respect to negligence, however, there are ten delineated exceptions in which the Commonwealth has agreed to waive sovereign immunity and to impose liability. 42 Pa. Cons. Stat. § 8522(a). "Exceptions to sovereign immunity are to be narrowly construed." *Dean v. Commonwealth, Dep't of Transp.*, 751 A.2d 1130, 1134 (Pa. 2000). Relevant here, one such exception applies when the claim relates to the "care, custody or control of personal property in the possession or control of Commonwealth parties[.]" 42 Pa. Cons. Stat. § 8522(b)(3). That exception may apply here.[7] *See, e.g.*, *Williams v. Stickman*, 917 A.2d 915, 918 (3d Cir. 2007); *Graham v. Pa. Dep't of Corr.*, 2023 U.S. Dist. LEXIS 111869, at *15 (W.D. Pa. June 28, 2023) ("The exception related to 'care, custody, or control of personal property' . . . only relates to claims

---

[6] Defendants' brief also argues that Iglesias's claim for intentional infliction of emotional distress ("IIED") is barred by state sovereign immunity. (ECF No. 22 at 9.) Upon review, the Court does not construe the Complaint as asserting a claim for IIED. Defendants are correct, however, that even if Iglesias were asserting an IIED claim, such claim would be barred by state sovereign immunity because Defendants are alleged to have been acting within the scope of their employment with the DOC. *See Doe v. Pa. Dep't of Corr.*, 2021 U.S. Dist. LEXIS 31970, at *56 (W.D. Pa. Feb. 19, 2021) ("[S]overeign immunity applies even to intentional torts committed by Commonwealth defendants acting in their individual capacities.") (internal citations omitted).

[7] As stated above, Iglesias repeatedly alleges that Defendants, and specifically Kois, "destroyed my photobook[.]" (ECF No. 5 at 3.)

12

for property losses suffered with respect to the personal property in control of the local agency.").

Although Defendants acknowledge the personal property exception to state sovereign immunity in their brief, they make no argument as to why it does not apply here. The Court therefore cannot conclude at this time that Defendants are immune from suit with respect to any negligence claim asserted by Iglesias for the alleged destruction of his property.

As previously discussed, however, the only allegations against Zaken and Longstreth relate solely to their involvement in the grievance process and not with respect to any allegedly negligent conduct related to the destruction of Iglesias's personal property. *See* discussion *supra* Section III.A.5. Instead, the Complaint alleges that the mailroom—i.e., Kois—negligently destroyed or lost the photobook. Because there are no allegations that Zaken or Longstreth took part in the alleged destruction of Iglesias's personal property, and there is no other factual basis for a negligence claim that could fall within any of the exceptions to sovereign immunity, the negligence claim against them will be dismissed with prejudice.

## IV. Conclusion

For these reasons, Defendants' Motion to Dismiss for Failure to State a Claim (ECF No. 20) will be granted in part and denied in part.

An appropriate order to follow.


Dated:  February 6, 2025                /s/ Patricia L. Dodge
                                        PATRICIA L. DODGE
                                        United States Magistrate Judge